NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BENJAMIN MOORE & CO., <br><br> Plaintiff, <br> v. <br><br> B.M. MEDITERRANEAN S.A. and COLORSTYLE INDUSTRIAL S.A. <br><br> Defendants. | Civil Action No.: 21-cv-04328 <br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

Currently before the Court is defendant Colorstyle Industrial S.A.'s ("Colorstyle") motion to dismiss (ECF No. 57) plaintiff Benjamin Moore & Co.'s ("Benjamin Moore" or "Plaintiff") First Amended Complaint (ECF No. 48, "FAC"). Colorstyle moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). ECF No. 57. Plaintiff opposed the motion (ECF No. 60, "Pl. Opp."), and Colorstyle replied (ECF No. 62). The Court has considered the submissions made in support of and in opposition to the motion and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Colorstyle's motion is **GRANTED**.

**WHEREAS** the instant dispute arises out of the relationship between Plaintiff, a New Jersey corporation known for its formulation, manufacturing, and global distribution of paints, stains, and related products, and B.M. Mediterranean S.A. ("B.M. Med."), a Greek corporation.[1] FAC ¶ 1–5. Plaintiff licenses its products to a select group of independent retailers and licensees ("Authorized Licensees") in over forty-five countries. *Id.* ¶¶ 13–18. In January 2013, B.M. Med.

---

[1] The following facts are accepted as true for the purposes of the instant motion to dismiss.

1

became one such Authorized Licensee when Plaintiff granted it the right to manufacture, package, advertise, market, demonstrate, promote, and sell certain Benjamin Moore products, as well as use Benjamin Moore names and marks, under a license agreement (the "License Agreement"). *Id.* ¶¶ 19–21.  The License Agreement called for B.M. Med. to pay an annual minimum royalty plus a certain percentage of net sales depending on sales volume. *Id.* ¶¶ 24–25.  The License Agreement detailed payment timelines, duration, and termination rights. *Id.* ¶¶ 26–33; and

  **WHEREAS** Plaintiff contends that B.M. Med. failed to fully satisfy its payment obligations under the terms of the License Agreement for 2014-2019 and to meet certain sales minimums during the relationship. *Id.* ¶¶ 35–44.  Following unsuccessful discussions between the parties about Plaintiff potentially acquiring B.M. Med. to resolve the outstanding debts, Plaintiff notified B.M. Med. in writing that it was terminating the License Agreement, effective immediately. *Id.* ¶¶ 45–50.  Plaintiff contends that it demanded B.M. Med. cease and desist activities involving the manufacturing of Benjamin Moore's products and use of Benjamin Moore's names and marks, and that B.M. Med. did not comply. *Id.* ¶¶ 51–55.  Plaintiff avers that as of the filing of its amended complaint, B.M. Med. continued to sell Benjamin Moore products and use its names and marks, and that it has yet to satisfy its outstanding payments due under the License Agreement. *Id.* ¶ 55; and

  **WHEREAS** Plaintiff's amended complaint adds claims against Colorstyle, also a Greek corporation. *Id.* ¶¶ 1, 6.  Plaintiff asserts Colorstyle is merely an "alter ego" of B.M. Med., which B.M. Med.'s owner, George Christovasilis ("Christovasilis"), who became Colorstyle's Chairman and CEO, formed in 2020 after Plaintiff informed B.M. Med. of the termination of the License Agreement. *Id.* ¶¶ 56–57.  Plaintiff insists that Colorstyle has unlawfully used Benjamin Moore's name and confidential paint formulations to market its own brand of paint. *Id.* ¶¶ 59, 74.  It

contends that B.M. Med. has "continued to violate the License Agreement by . . . continuing to produce paints using Benjamin Moore's formulas in [B.M. Med.]'s paint factory, and selling those paints through Colorstyle, all in an effort to unlawfully extend its business and hide its unlawful proceeds from Benjamin Moore vis a vis its alter ego, Colorstyle." *Id.* ¶ 75; and

 **WHEREAS** Plaintiff filed the instant amended complaint against B.M. Med. and Colorstyle asserting the following claims:  Breach of Contract (Count I); Breach of Implied Covenant of Good Faith and Fair Dealing (Count II); Common Law Unjust Enrichment (Count III); Account Stated (Count IV); Declaratory Judgment (Count V); Injunctive Relief (Count VI); Federal Trademark Infringement, Lanham Act (15 U.S.C. § 1114(1)) (Count VII); Federal Trademark Infringement, Lanham Act (15 U.S.C. § 1125(a)) (Count VIII); Unfair Competition, False Designation of Origin and False Description, Lanham Act (15 U.S.C. § 1125(a)) (Count IX); Common Law Unfair Competition (Count X); and Misappropriation and Conversion (Count XI). ECF No. 48; and

 **WHEREAS** B.M. Med. filed a motion to dismiss Counts VII–XI (ECF No. 55) and an answer to Counts I–VI (ECF No. 56).  B.M. Med.'s answer also asserted several counterclaims against Benjamin Moore.  ECF No. 56.  Colorstyle separately filed a motion to dismiss Benjamin Moore's complaint in its entirety.  ECF No. 57.  Both Defendants moved for dismissal for lack of subject-matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.  ECF Nos. 55, 57.  Plaintiff proceeded to file an answer to B.M Med.'s counterclaims (ECF No. 59), along with a brief in opposition to the motions to dismiss (ECF No. 60) to which B.M. Med. and Colorstyle filed a joint reply brief (ECF No. 62).  On September 7, 2023, Plaintiff

filed a notice of voluntary dismissal as to Counts VII through XI of its amended complaint.[2]  ECF No. 87.  This Court so-ordered Plaintiff's voluntary dismissal of those counts.  ECF No. 89.  Accordingly, on September 14, 2023, Magistrate Judge Edward S. Kiel administratively terminated B.M. Med.'s motion to dismiss (ECF No. 55) as moot.  ECF No. 91.  Thus, the only remaining matter for the Court to address at this juncture is Colorstyle's motion to dismiss (ECF No. 57) insofar as it addresses Counts I through VI[3] of Plaintiff's amended complaint;[4] and

**WHEREAS** to survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party.  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule

---

[2] The voluntary dismissal followed the Court's request for supplemental briefing from the parties analyzing Plaintiff's Lanham Act claims under a new standard announced by the U.S. Supreme Court in *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412 (2023). ECF No. 83. Therein, resolving an existing circuit split, the Court determined that 15 U.S.C. § 1114(1)(a) and § 1125(a)(1) "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic." *Abitron Austria GmbH*, 600 U.S. at 415.

[3] Plaintiff's opposition notes:  "It is not clear from Colorstyle's papers whether they seek to dismiss Count VI of the Complaint, as it is absent from their recitation of requested relief in the Preliminary Statement but appears perfunctorily in a three-sentence argument at the end of their brief. However, [Plaintiff] assumes that its absence in the Preliminary Statement was an oversight on Colorstyle's part and that Colorstyle seeks to dismiss the Complaint in its entirety."  Pl. Opp. at 1 n.1.  The Court proceeds under the same assumption.

[4] Plaintiff's voluntary dismissal of Counts VII–XI moots the following arguments asserted in Colorstyle's motion to dismiss:  (1) applicability of the Lanham Act to this action and the statute's extraterritorial application, *see* ECF No. 57-2 ("Def. Br.") at 12–24; (2) dismissal of Counts X and XI, *see id.* at 26–29; (3) dismissal of Counts VII–XI pursuant to Rule 12(b)(3), *see id.* at 29–30; and (4) whether the Entire Controversy Doctrine is applicable to Plaintiff's Lanham Act claims, *see id.* at 30–31.

12(b)(6).  *Iqbal*, 556 U.S. at 678 (citations omitted).  Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); and

**WHEREAS** the crux of Colorstyle's argument for dismissal as to Counts I–VI, Plaintiff's contract-related claims, is that it was not a party to the License Agreement between Plaintiff and B.M. Med. and thus cannot be liable under the agreement.  Def. Br. at 1.  However, "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'"  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quoting 21 Richard A. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)).  Here, Plaintiff asks the Court to pierce Colorstyle's corporate veil, such that it would be liable under the License Agreement for B.M. Med.'s conduct under a theory that Colorstyle is merely B.M. Med.'s "alter ego entity."  FAC ¶ 56; *see* Pl. Op. at 5, 21–23.  Colorstyle argues, however, that Plaintiff's alter ego claims are insufficient as pled.  Def. Br. at 10–12; and

**WHEREAS** "[a]n alter ego theory of liability applies when one entity so dominates another that, together, the entities act as a single and cohesive economic unit."  *Thomas Glob. Grp. L.L.C. v. Watkins*, No. CV134864SRCCLW, 2016 WL 3946774, at *2 (D.N.J. July 19, 2016) (citing *State Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 500-01 (1983)).  "Under New Jersey law, a court may pierce the corporate veil only if two elements are present:  (1) that a parent corporation dominated its subsidiary to the extent that the subsidiary had no separate existence but was merely a conduit for the parent and (2) that the parent corporation abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent

5

the law." *Watson v. Sunrise Sr. Living Servs., Inc.*, No. CIV.A. 10-230 KM, 2013 WL 103966, at *13 (D.N.J. Jan. 8, 2013) (citations and quotations omitted). "While in most cases courts have been willing to pierce the corporate veil in the parent-subsidiary context, . . . there appears to be no reason to limit the application of the rule to parent-subsidiary relationships." *Stochastic Decisions, Inc. v. DiDomenico*, 236 N.J. Super. 388, 395 (App. Div. 1989). "To ascertain whether the first element is satisfied, courts within the Third Circuit consider a variety of factors, including gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, [ ], siphoning of funds of the corporation by the dominant stockholder, non-function of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder." *Watson*, 2013 WL 103966, at *13 (citations and quotations omitted). "A plaintiff must affirmatively plead both the factors for alter-ego liability and the factual underpinnings supporting those factors with respect to each individual defendant." *Richmond v. Lumisol Elec. Ltd.,* No. CIV.A. 13-1944 MLC, 2014 WL 1405159, at *4 (D.N.J. Apr. 10, 2014); and

**WHEREAS** Plaintiff makes several allegations in an attempt to support its alter-ego theory of liability. First, Colorstyle is owned in part by Topiamont Corporation LTD ("Topiamont"), which has a singular shareholder: Christovasilis, B.M. Med's CEO and 95% shareholder.[5] FAC ¶ 57. Next, Plaintiff alleges that B.M. Med. and Colorstyle have commingled operations, citing a Colorstyle advertisement that notes products are produced by B.M. Med, the existence of markings of Colorstyle products on a B.M. Med-operated website, distribution of B.M. Med.-produced paint

---

[5] However, Plaintiff acknowledges a letter it received from Ilias Kiriakidis, "owner of the F.H.L KIRIAKIDIS Group and the allied company EAGLE S.A., which acquired recently, the 70% of the former BENJAMIN MOORE GREECE company, now launched under the new name COLORSTYLE PAINTS," indicating Topiamont could own, at most, 30% of Colorstyle. FAC ¶ 58.

cans under Colorstyle shipping documents, and integration of B.M. Med.'s employees, equipment, and a factory lease agreement into Colorstyle operations. *Id.* ¶¶ 60–67. Finally, Benjamin Moore contends that laboratory testing analyses indicate matching compositions between Benjamin Moore and Colorstyle products. *Id.* ¶¶ 69–73; and

**WHEREAS** although these allegations may suggest a relationship between Colorstyle and B.M. Med., they fail to embrace the factors enumerated under Third Circuit precedent to state a claim for alter ego liability.[6] To illustrate, in *Wrist Worldwide Trading GMBH v. MV Auto Banner*, the court, denying as futile a motion to amend a complaint involving alter ego claims, noted that "Plaintiff's [p]roposed [a]lter [e]go [a]llegation presumes the legal conclusion that [Company A] is the alter ego of [Company B], and fails to speak to the factors that the Third Circuit has identified in determining whether a subsidiary is a mere instrumentality of the parent." No. CIV.A. 10-2326 PGS E, 2011 WL 1321794, at *6 (D.N.J. Mar. 30, 2011). Indeed, the court explained that because "Plaintiff d[id] not allege that [Company A] was grossly undercapitalized, failed to observe corporate formalities, had non-functioning directors, or that it commingled funds with [Company B]," it had "failed to allege sufficient facts outlined by the Third Circuit to support an alter ego claim." *Id.*; *Richmond*, 2014 WL 1405159, at *4 (dismissing claims that were "strikingly different from cases in which the claim for corporate veil piercing was properly plead[ed] because the claim was 'supported by factual allegations illustrating why or how the defendants, for example, failed to observe corporate formalities and commingled funds'" (quoting *Holzli v. DeLuca Enters.*, No. CIV. 11-06148 JBS, 2012 WL 983693, at *3 (D.N.J. Mar. 21, 2012))). Here, too, Plaintiff's amended complaint does not address the requisite factors. Though Plaintiff's amended complaint

---

[6] Notably, Plaintiff's opposition brief, in supporting the sufficiency of its alter ego claims, omits the relevant Third Circuit factors from discussion. *See* Pl. Opp. at 22.

alleges partial common ownership and potentially intertwined business operations, such allegations, without more, are insufficient to proceed on an alter ego theory under Third Circuit precedent.[7]  Plaintiff's amended complaint will thus be dismissed as to the claims pursued against Colorstyle.[8]

**Accordingly, IT IS**, on this 27th day of October, 2023,

**ORDERED** that the Court grants Colorstyle's motion to dismiss (ECF No. 57) and dismisses Plaintiff's first amended complaint (ECF No. 48) as to its claims against Colorstyle without prejudice; and it is further

**ORDERED** that to the extent Plaintiff is able to cure the pleading deficiencies identified in the Court's Opinion, it shall have thirty (30) days from the date of this Order to file an amended complaint.  Insofar as Plaintiff submits an amended complaint, it shall also provide a form of the amended complaint that indicates in what respect it differs from the original complaint, by bracketing or striking through materials to be deleted and underlining materials to be added.  *See* L. Civ. R. 15(a)(2).

      **SO ORDERED.**

*s/Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

---

[7] Plaintiff, in opposition, relies on *Watson*, 2013 WL 103966, to support its alter-ego theory.  *See* Pl. Opp. at 22.  There, however, Plaintiff alleged not only that the Company A "dominate[d] and control[d] [Company B], to the extent that [Company B] is merely a sham corporation," but also that Company B maintained no financial books or corporate records of its own and that its profits were "swept into an account controlled by another subsidiary from which [Company A] withdraws amounts whenever and for whatever purposes it deems necessary in its sole discretion." *Watson*, 2013 WL 103966, at *14.  It further alleged that Company A and Company B failed to observe corporate formalities, including Company A fully controlling the other's budget and that Company B had no bank accounts, capital, or business purpose of its own.  *Id.*  Again, such allegations embraced the previously discussed factors in a way that the instant amended complaint does not.

[8] In light of the Court's dismissal of Plaintiff's claims against Colorstyle for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court need not address Colorstyle's remaining arguments.