<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BENJAMIN MOORE & CO.,<br><br>*Plaintiff,*<br><br>v.<br><br>B.M. MEDITERRANEAN S.A. and<br>COLORSTYLE INDUSTRIAL S.A.,<br><br>*Defendants.* | Civil Action No. 21-4328<br><br>**OPINION AND ORDER**<br><br>April 30, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon dual Motions for Reconsideration filed by the parties in this action, Benjamin Moore & Co. ("BM" or "Plaintiff") and B.M. Mediterranean ("BM Med." or "Defendant"). BM and BM Med. seek reconsideration of the Court's summary judgment Opinion (ECF 124, "Op.") and Order (ECF 125), filed on October 28, 2024 pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1(i). Plaintiff seeks reconsideration of the Court's decision allowing Defendant's counterclaims for state and federal trade secret misappropriation and tortious interference to proceed. Plaintiff also asks the Court to reconsider its damages pleading, discussion of which is absent from the Court's summary judgment Opinion and Order. Defendant asks the Court to reconsider its ruling rejecting several of the counterclaims alleged in its cross-motion for summary judgment.[1] The Court reviewed the parties' submissions

---

[1] BM Med. argues the Court erred in determining: (1) the relevant statute of limitations for the License Agreement falls under N.J.S.A. § 2A:14-1 rather than the Uniform Commercial Code as codified in N.J.S.A. § 12A:2-725; (2) the License Agreement's force majeure clause did not excuse BM Med.'s non-performance; (3) Plaintiff did not fail to perform its contractual obligations; and (4) BM Med. had no right to use Plaintiff's name and marks as of January 9, 2020 except for the

and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion for Reconsideration is **GRANTED** and Defendant's cross-motion is **DENIED**.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

The following is an edited summary of the factual background of this action previously provided in this Court's Opinion of October 28, 2024. (*See* Op. at *1.) Plaintiff is a New Jersey corporation known for its formulation, manufacturing, and global distribution of paints, stains, and related products. (*Id*.) Defendant is a Greek corporation that formerly engaged in similar formulation, manufacturing, and distribution of paints, stains, and related products throughout Greece and other territories in the Mediterranean region and eastern Europe. (ECF 114-1, "BM Med. Summary Judgment Motion" or "Def. SJ Mot." at 3.)

In January 2013, BM Med. became a part of a select group of independent retailers ("Authorized Licensees") to receive a license to manufacture, package, advertise, market, demonstrate, promote, and sell certain Benjamin Moore products, as well as use the Benjamin Moore name and trademark. BM Med. became an Authorized Licensee pursuant to a contract orchestrated and signed by the parties (the "License Agreement"). The License Agreement called for BM Med. to pay an annual minimum royalty plus a certain percentage of net sales depending on sales volume. (Op. at *1.) The present dispute arises from alleged unpaid royalties under the terms of the License Agreement from 2014-2019, and the failure of Defendants to meet certain

---

limited purpose of selling its remaining inventory during the 6-month permissible period as outlined in the License Agreement. (ECF 34-1.)

[2] The facts and procedural history are drawn from the Court's summary judgment Opinion (ECF 124, "Op."), Defendants' Motion for Summary Judgment (ECF 114-1, or "BM Med. SJ Mot."), Plaintiff's First Amended Complaint (ECF 48, "First Amended Complaint" or "FAC"), and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

sales minimums during the relationship. (*Id.*) The business relationship was unilaterally terminated by Plaintiff on January 9, 2020. (ECF 48, "First Amended Complaint" or "FAC" ¶ 111.) Plaintiff filed suit against BM Med. on March 5, 2021 alleging claims for breach of contract, unjust enrichment, account stated, and declaratory judgment. (Op. at *1.) Defendant brought counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory judgment, injunctive relief, misappropriation of trade secrets and confidential information under the New Jersey Trade Secrets Act, N.J. Stat. Ann. § 56:15-1 ("NJTSA"), tortious interference with existing and prospective contractual and business relationships, unjust enrichment, and violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA").

On October 28, 2024, this Court ruled in favor of Plaintiff on all claims (*See generally* Op.) The Court dismissed almost all of Defendant's counterclaims. Defendant's remaining claims allege misappropriation of trade secrets under state and federal law, and tortious interference. (*Id.* at *6.) Defendant filed a Motion for Reconsideration on November 11, 2024. (ECF 126.) Plaintiff also filed a Motion for Reconsideration the next day. (ECF 127.) Subsequently, Defendant filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit. (ECF 129.) While the Notice of Appeal was pending, the parties briefed Defendant's Motion for Reconsideration. (ECF Nos. 131, 132, 133.) However, the Court terminated the pending Motions for Reconsideration in light of Defendant's appeal on May 13, 2025. (ECF 135.) The appellate court dismissed the appeal for lack of appellate jurisdiction on October 7, 2025. (ECF 136.) This Court then ordered the parties to file new Motions for Reconsideration and supplemental briefings upon the parties' requests for the previous motions to be reinstated. (ECF 139.)

Defendant's Second Motion for Reconsideration (ECF 140, "Defendant Motion" or "Def. Mot.") was filed on October 17, 2025. Defendant filed an opposition motion the same day. (ECF

3

141, "Defendant Opposition" or "Def. Opp.) Plaintiff filed a Second Motion for Reconsideration on October 20, 2025 (ECF 144, "Plaintiff Motion" or "Pl. Mot.") and responded to Defendant's second motion on November 3, 2025 (ECF 146, "Plaintiff Opposition" or "Pl. Opp.") On November 10, 2025, Plaintiff replied to Defendant's Opposition. (ECF 147, "Plaintiff Reply" or "Pl. Reply.")[3]

## II.      LEGAL STANDARD

A party moving for reconsideration of an order of this Court must file its motion within fourteen (14) days after the entry of that order and set "forth concisely the matter or controlling decisions which the party believes the . . . Judge has overlooked." L. Civ. R. 7.1(i). Motions for Reconsideration are "extremely limited procedural vehicle(s)" that are to be granted "very sparingly." *Clark v. Prudential Ins. Co. of Am.*, 940 F. Supp. 2d 186, 189 (D.N.J. 2013) (quotation marks omitted). A Motion for Reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue or re-hash its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, at *2-3 (D.N.J. July 30, 2015); *see also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988).

A Motion for Reconsideration may only be granted if the moving party shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [reached its original decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (quotation marks and italics omitted). Such a motion is "not a vehicle for a litigant to raise new arguments." *CPS Medmanagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 168

---

[3] Arguments made in the Reply were not considered in this opinion because it was filed without leave of the Court.

(D.N.J. 2013); *see Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001) (explaining a motion for reconsideration is not an opportunity to raise matters that could have been raised before the original decision was reached). "Mere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs. LLC*, 2010 WL 3257992, at *6 (quoting *P. Schoenfeld Asset Mgmt. LLC*, 161 F. Supp. 2d at 353).

### III.    ANALYSIS

Plaintiff seeks narrow reconsideration of the Court's October 28, 2024 Opinion, in which the Court allowed Defendant's counterclaims for misappropriation of trade secrets and tortious interference with prospective business relationships to proceed. (*See* Op.) Plaintiff also seeks reconsideration of its request for damages, which the Court's previous Opinion does not discuss. Defendant's cross-motion seeks reconsideration of four arguments made in its Motion for Summary Judgment. (ECF 114.) First, Defendant argues the Court should reconsider whether the relevant statute of limitations for Plaintiff's breach of contract claims arises under the Uniform Commercial Code as codified by N.J.S.A. § 12A:2-725, instead of the N.J.S.A. § 2A:14-1. Second, Defendant asks the Court to reconsider its holding that the force majeure provision of the License Agreement excused its nonpayment of royalties to Plaintiff. Third, Defendant asks the Court to reconsider its determination that Plaintiff has not failed to perform its own contractual duties under the License Agreement by "fail[ing] to support BM Med. on technical matters, product development, marketing and advertising." (Def. Mot. at 9.) Finally, Defendant seeks reconsideration of the Court's holding that Plaintiff is entitled to summary judgment on its breach of contract and account stated claim because Plaintiff did not allow Defendant to mitigate its damages by selling its existing inventory at the time the License Agreement was terminated. (*See generally* Def. Mot.)

A.   The Court Applied the Wrong Legal Standard When It Held Defendant May Proceed

on Its Claims for Misappropriation of Trade Secrets and Tortious Interference

As a threshold matter, reconsideration is appropriate only when the movant presents new controlling law, newly available evidence, or a court's clear error of law or fact to prevent manifest injustice. *Blystone*, 664 F.3d at 415. Here, Plaintiff argues the Court used the wrong legal standard in allowing two of Defendant's counterclaims to proceed. (Pl. Mot. at 7.) The use of an incorrect legal standard constitutes a "clear error of law" for the purposes of a Motion for Reconsideration pursuant to L. Civ. R. 7.1. *Steele v. Aramark Corp.*, 535 Appx. 137, 140-41 (3d Cir. 2013). Therefore, the Court may properly reconsider its analysis.

In its Opinion granting summary judgment for Plaintiff, this Court held "[b]ecause Defendant sufficiently alleged its counterclaims for state and federal trade secret violations and tortious interference, those claims survive the instant motion." (Op. at 11.) Plaintiff argues that the Court used the motion to dismiss standard under Fed. R. Civ. P. 12(b)(6)—focusing on the sufficiency of the pleadings—rather than the summary judgment standard pursuant to Fed. R. Civ. P. 56(a), which analyzes whether factual issues remain in dispute. Defendant argues Plaintiff makes a "broad extrapolation" focusing on the Court's word choice, and the Court used the correct standard in evaluating its counterclaims. (Def. Opp. at 10.) Defendant suggests the use of the phrase "sufficiently alleged" was a typo and misstatement, and the Court's actual legal analysis was proper. (Def. Opp. at 10.) Therefore, Defendant argues Plaintiff should not be allowed to relitigate its arguments opposing its counterclaims. (*Id.*)

Upon review of the Opinion, the Court agrees with Plaintiff that the wrong standard was used in allowing the counterclaims to proceed in this litigation. To survive summary judgment, a

6

party must succeed under one of two approaches. First, "the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law." *Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024). Second, "a moving party may instead demonstrate that the nonmoving party has not made a showing sufficient to establish the existence of an element essential to that party's case." *Id*. (internal quotations omitted). The Court therefore proceeds in its analysis to determine whether Defendant's counterclaims for misappropriation of trade secrets or tortious interference survives summary judgment under the correct legal standard.

Defendant alleged misappropriation and misuse of trade secrets and confidential information under New Jersey law (Fifth Counterclaim) and federal law (Eighth Counterclaim). It is the practice of this District for courts to "fold" its analysis of the DTSA into review of the NJTSA. *Austar International Limited v. AustarPharma LLC*, 425 F. Supp. 3d 336, 355 (D.N.J. 2019); *see also, Corporate Synergies Group, LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *3 (D.N.J. Aug. 12, 2019). The Court will therefore analyze these claims simultaneously.

Both the DTSA and NJTSA require a party to show (1) the existence of a trade secret and (2) the misappropriation of that trade secret. *Scherer Design Group, LLC v. Schwartz*, No. 18-3540, 2018 WL 3613421, at *4 (D.N.J. July 26, 2018). A "trade secret" is defined by N.J. Stat. Ann. § 56:15-2 as information that:[4]

1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

---

[4] The form of a "trade secret" is defined broadly as being "held by one or more people … including a formula, pattern, business data compilation, program, device, method, technique, design, diagram, drawing, invention, plan, procedure, prototype or process" that meets the two-prong test described above. N.J. Stat. Ann. § 56:15-2.

N.J. Stat. Ann. § 56:15-2. Misappropriation is defined under New Jersey law as the:

1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
2) Disclosure or use of a trade secret of another without express or implied consent of the trade secret owner by a person who:
   a. used improper means to acquire knowledge of the trade secret; or
   b. at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or
   c. before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

N.J. Stat. Ann. § 56:15-2. In this matter, Defendant claims its trade secrets were misappropriated because Plaintiff had access to "paint formulas to accommodate the Greek and Balkans marketplace" and "marketing strategies and an extensive distribution network and customers" created by BM Med. (Def. SJ Mot. at 27.) Defendant argues the above information was revealed to Plaintiff during discussions between the parties to acquire BM Med. in 2019. (*Id*.) Defendant alleged misappropriation on the grounds the acquisition discussions were a "pretense" to obtain the information to "solicit, intimidate, and threaten [BM Med.'s] main distributors." (ECF 114-3, "Declaration of John Christovasilis" or "Christovasilis Dec." ¶ 16.) Defendant also alleged the value of the information allegedly misappropriated was over 13 million euros. (Def. SJ Mot. at 27.)

Defendant failed to support these allegations with undisputed facts. During discovery, Plaintiff undermined the existence of trade secrets. BM Med.'s manager, John Christovasilis, acknowledged during his deposition that BM is not using any of BM Med's formulas.[5] (ECF 107-

---

[5] "Q. But -- but just to be clear, there's no allegation here that Benjamin Moore or any of its agents or other distributors are actually using BM Mediterranean's formulas or trade secrets. Right? MR. SIPSAS: Objection. A. They're using – they're not using the formulations. They are using the trade secrets that have to do with our customers, because each one of our customers that they have

6.) He did state that BM "used … all our contacts, distributors and stores." (*Id.* at 265:11-265:21.) However, Defendant's summary judgment brief and supporting exhibits lack evidence specifying exactly what marketing strategies, distributors, and customers constitute the "trade secrets" at issue. Furthermore, Plaintiff responded in its opposition to Defendant's summary judgment motion that Defendant failed to provide facts showing the information had any independent economic value, or how damages were calculated. "Defendant claims millions of dollars in alleged damages, but provides no facts, analysis, expert opinion, or legal explanation as to how Benjamin Moore breached any contractual or legal obligation to Defendant." (ECF 118 at 2.) Additionally, the only contact with distributors Defendant has shown was when BM informed BM Med.'s clients that the License Agreement was terminated. (Pl. Mot. at 12.) Defendant has failed to show how such contact implicates a "trade secret," nonetheless that any trade secret was "misused," as Plaintiffs were within their right to inform distributors the Agreement was terminated.

Defendant also alleged a claim for tortious interference (Sixth Counterclaim). To establish a claim for interference with an existing contract, Defendant must prove (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference. *Fidelity Eatontown, LLC v. Excellency Enterprise, LLC*, No. 16-3899, 2017 WL 2691417, at *6 (D.N.J. June 22, 2017). To establish a claim for tortious interference for a prospective business relationship, Defendant must replace the first prong and prove "a reasonable expectation of economic advantage." *Id*. at *5.

---

gone to in the areas that they are now selling products are previous B.M. Med clients." (ECF 107-6 at 230:14-231:8.)

The crux of Defendant's tortious interference claims is that it was unlawful for BM to contact BM Med.'s clients after the License Agreement terminated. BM Med. contends this conduct "discred[ited] B.M. Mediterranean S.A. as [selling] fake Benjamin Moore paints while B.M. Mediterranean S.A. was trying to sell its existing inventory." (Def. SJ Mot. at 28.) Defendant also alleges it was tortious for BM to sue Eglezos Paints[6] because this action was allegedly taken to force BM Med. to sell its remaining inventory at a loss. (*Id*. at 29.)

As a primary matter, the Court cannot grant summary judgment in favor of Defendant on its claim for tortious interference with an existing contract, because Defendant fails to specify which client relationship was violated by Plaintiff during its allotted time to sell existing inventory. The action against Eglezos Paints was not filed until March 2023, almost three years after the termination of the License Agreement on January 9, 2020. It is true that the License Agreement allowed BM Med. to continue selling its existing inventory of Benjamin Moore paint products to mitigate its losses. However, this period was limited to only six months. (ECF 34-1, "License Agreement" at 13.) The Court agrees with Plaintiff that there could be no "reasonable expectation" of economic benefit from selling the products after July 9, 2020. (Pl. Mot. at 15.) Therefore, the action against Eglezos is irrelevant to the Court's analysis of either tortious interference claim.

Defendant's summary judgment brief and supporting materials are silent as to whether any tortious communications with BM Med.'s clients occurred during this period, and what the specific nature of the communications were. In its opposition brief, Defendant presents the statements of John Christovasilis in his deposition (ECF 114-6) where he states he "thinks" a letter went to all of BM Med's customers and distributors stating BM Med. is no longer an actual dealer of

---

[6] Eglezos Paints is a major distributor of paint products based in Greece. Benjamin Moore filed suit against Eglezos Paints on March 3, 2023.

Benjamin Moore products. (Def. Opp at 16.) However, in Mr. Christovasilis' Declaration, he certifies in a letter sent by Benjamin Moore to "all BM Med [d]istributors and customers in *2021*" stating "[BM Med.] no longer represents our company and has neither the right to use the trademarks of our company nor the right to manufacture, distribute, trade or sell any product or formulations and formulas of our company." (Christovasilis Dec. ¶ 16) (emphasis added). The letter states that Benjamin Moore already notified recipients "with our letter dated 09.09.2020"— after the end of the six-month window where BM Med. was allowed to sell its remaining inventory of Benjamin Moore products. Therefore, Defendant has failed to produce evidence that BM's communications with its customers hindered a "reasonable expectation of privacy."

Therefore, the Court holds that BM Med. failed to present evidence showing there is no disputed material facts supporting its claims for misappropriation of trade secrets or tortious interference. Thus, summary judgment is **DENIED** for Defendant as to these counterclaims. Accordingly, summary judgment is **GRANTED** to Plaintiff against all of Defendant's counterclaims.

B.  Defendant Failed to Present New Law, Facts, or Show the Court Misapplied Any Law or Facts In Its Motion For Reconsideration

As previously discussed, a court should only grant a request to reconsider a final ruling when the moving party shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [reached its original decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone*, 664 F.3d at 415. In its brief supporting its Motion for Reconsideration, Defendant asks the Court to review its claims regarding (1) the appropriate statute of limitations for Plaintiff's breach of contract claim; (2) the relevance of the force majeure clause; (3) Plaintiff's alleged breach of the License

11

Agreement; and (4) BM Med.'s right to sell its existing inventory. (*See generally* Def. Mot.) In its summary judgment Opinion, the Court ruled against Defendant on each of these claims. (*See generally* Op.) Defendant has failed to present new facts or law, or show the Court overlooked facts or law in its present motion.

First, Defendant argues in its Motion for Reconsideration that Plaintiff's breach of contract claim should be barred by the Uniform Commercial Code's four-year statute of limitations because the License Agreement is a contract for the sale of goods. (Def. Mot. at 6.) The Court held in its Opinion that the contract is subject to the six-year statute of limitations under N.J. Stat. Ann. § 2A:14-1. (Op. at 8.) Defendant argues the License Agreement is a mixed contract, primarily for royalties based on the sales of Benjamin Moore products by BM Med. (Def. Mot. at 6.) However, these arguments were not made in BM Med.'s Motion for Summary Judgment. BM Med. argues this Court "erred in not applying the appropriate statute of limitations" in its previous Opinion, and therefore the Court misapplied law entitling it to reconsideration. (Def. Mot. at 7.) In actuality, Defendant is seeking "another bite at the apple" by flushing out arguments available to Defendant at the time its summary judgment brief was filed. It is well established that a Motion for Reconsideration is not an avenue where a litigant may assert new claims that could have been presented to the court at an earlier stage of litigation. *Bowers*, 130 F. Supp. at 613 (explaining a motion for reconsideration is not an opportunity to raise matters that could have been raised before the original decision was reached). Defendant raised no new facts or intervening change in controlling law that justifies further analysis of its statute of limitations argument.

Defendant's subsequent arguments suffer from the same flaws. Defendant argues the force majeure clause absolves Defendant from owing royalties to Plaintiff due to Greece's economic crisis and capital control regulations imposed by the Greek government. (Def. Mot. at 9.)

Defendant used this exact same argument in its summary judgment motion. (Def. SJ Mot. at 8-9.) Again, Defendant is relitigating claims this Court has previously ruled on and fails to present new evidence, law, or facts that allow Defendant's claim to be reconsidered. *P. Schoenfeld Asset Mgmt., LLC*, 161 F. Supp. 2d at 352 (holding a motion for reconsideration "may not be used to relitigate old matters, nor raise arguments or present evidence that could have been raised prior to the entry of judgment"). The Court therefore denies Defendant's request to reconsider its ruling denying the force majeure claim.

Next, Defendant argues the Court should reconsider its holding that Plaintiff did not fail to perform under the License Agreement. (Def. Mot. at 9.) In its summary judgment motion, Defendant argues in its first counterclaim that "Plaintiff breached its contract[] by not providing any technical or marketing support to B.M. Mediterranean S.A. from 2013 to the unilateral termination date." (Def. SJ Mot. at 22.) In its Motion for Reconsideration, Defendant argues "Plaintiff failed to perform its contractual obligations under the [License] Agreement. Specifically, Plaintiff failed to support BM Med. on technical matters, product development, marketing and advertising." (Def. Mot. at 9.)

In its summary judgment motion, Defendant's argument for this counterclaim was a little over a page long. Defendant cited no cases except one, which was to present the standard for breach of contract. (Def. SJ Mot. at 22.) The only evidence from the record Defendant cited was the deposition of Mr. Christovasilis, without providing direct quotes. (*Id*.) In its motion to reconsider this claim, Defendant incorporated more evidence from the record, including a citation to the License Agreement and multiple citations to deposition transcripts. However, the Court may not consider this evidence because it was previously available to Defendant. *P. Schoenfeld Asset*

*Mgmt., LLC*, 161 F. Supp. 2d at 352. The Court's analysis therefore proceeds to Defendant's final counterclaim.

Defendant's final point argues BM Med. did not breach the License Agreement because it had the right to sell its remaining inventory after the termination notice was received on January 9, 2020. (Def. Mot. at 10.) Defendant supports this argument by quoting the relevant language in the License Agreement (ECF 34-1), its Statement of Undisputed Material Facts (ECF 114-2), and the deposition of Mr. Christovasilis. (ECF 114-6.) Defendant presents zero new controlling cases or previously unavailable facts in support of its argument. Defendant's claim is predicated on the same argument made in its summary judgment motion, "Plaintiff did not allow BM Mediterranean S.A. to exercise its option to sell existing inventory." (Def. SJ Mot. at 13.) This argument is unavailable for reconsideration because it was previously asserted, and Defendant seeks to relitigate the claim. *P. Schoenfeld Asset Mgmt., LLC*, 161 F. Supp. 2d at 352. The Court may not reconsider its judgment denying this claim because no newly available evidence, controlling law, or clear error has been presented to the Court. *Blystone*, 664 F.3d at 415. Therefore, Defendant's Motion for Reconsideration is **DENIED** as to all of its arguments.

C.   Damages should be awarded to Plaintiff

Plaintiff seeks reconsideration from the Court on the issue of damages. (Pl. Mot. at 4.) Plaintiff argues the Court overlooked its request for damages in its Motion for Summary Judgment, which was fully briefed and included in its proposed order submitted with its brief. (*Id.*) Defendant argues the Court did not overlook the issue of damages because the Court reserved the issue for trial. (Def. Opp. at 5-6.) The Court agrees with Plaintiff on this issue. The Court's October 28, 2024 Opinion granting Plaintiff's Motion for Summary Judgment clearly held Defendant's "[u]nsupported allegations, subjective beliefs, [and] arguments alone … [could not] forestall

14

summary judgment." (Op. at 6.) This Court held "Defendant failed to present the Court with any evidence to dispute any of [Plaintiff's] evidence." (*Id.*) This language shows a clear intention by the Court to rule in favor of Plaintiff on the issue of damages. Additionally, the Supreme Court has held that district courts should not hesitate to rule against a party that has failed to show disputed material facts. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This Court having held in its October 28, 2024 Opinion that "Plaintiff has established that no genuine issue of material fact exists as to the breach of contract and account stated claims," (Op. at 6), should have entered an order awarding damages to Plaintiff in the amount of $4,188,648.40. Not doing so was a clear error of law, which the Court fixes upon Plaintiff's request for reconsideration.

Accordingly, **IT IS** on this 30th day of April, 2026,

**ORDERED** that Plaintiff's Motion for Reconsideration (ECF 144) is hereby **GRANTED** such that Defendant's counterclaims for misappropriation of trade secrets and tortious interference are **DENIED** and it is further

**ORDERED** that Defendant's Motion for Reconsideration (ECF 140) is hereby **DENIED** as to granting summary judgment on Points I-IV of its motion; and it is further

**ORDERED** that Defendant must award Plaintiff damages in the amount of $4,188,648.40.

**SO ORDERED.**

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**

15

Orig:   Clerk
cc:     Stacey D. Adams, U.S.M.J.
        Parties